CAMPEAU GOODSELL SMITH
A Law Corporation
SCOTT L. GOODSELL, SBN 122223
440 N. First Street, Suite 100
San Jose, California 95112
(408) 295-9555

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re: ) Case No. 03-56788-ASW
)
TELEPATH CORPORATION, ) CHAPTER 11
)
)
Debtor. )
_____ )

## AMENDED DISCLOSURE STATEMENT ON
## PLAN OF REORGANIZATION

TELEPATH CORPORATION, the Debtor herein ("Debtor"), has prepared, and is

disseminating to its creditors, this AMENDED DISCLOSURE STATEMENT for the purpose of

soliciting acceptances to its PLAN OF REORGANIZATION dated January 10, 2009 (the

"Plan"). This Disclosure Statement is being provided to you, the holders of claims against Debtor

(hereinafter "claimants"), to provide you with adequate information to enable you to make

informed judgments before exercising your right to vote for or against acceptance of the Plan.

**THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE
UNITED STATES BANKRUPTCY COURT AS CONTAINING ADEQUATE
INFORMATION. DISTRIBUTION OF THIS DISCLOSURE STATEMENT
HAS BEEN AUTHORIZED BY THE COURT.**

As a claimant, your acceptance of the Plan is important. In order for the Plan to be confirmed by the Bankruptcy Court, the holders of two-thirds in amount and more than one-half in number of claims in each Class must vote for acceptance. An acceptance or rejection of the Plan may be voted by completing the accompanying Ballot and returning it to: **Scott L. Goodsell, Campeau Goodsell Smith, 440 N. First Street, Suite 100, San Jose, CA 95112.**

## BACKGROUND AND EVENTS LEADING TO PLAN OF REORGANIZATION

In July 1978, founder Les Ettinger incorporated Telepath Corporation. The firm purchased and refurbished used 2-way radio equipment and resold these products to users worldwide. Telepath established an excellent reputation for product quality and delivery.

In 1986, Les Ettinger purchased a 10,000 sf facility and leased the premised to Telepath, which provided Telepath with adequate space to accept a Motorola dealership contract. By 1990, Telepath's business volume had doubled. Thereafter, by 1995, Telepath's dealership contract with Motorola was expanded to include Motorola's full product line; Telepath also obtained full dealership contracts with other manufacturers, including Kenwood, Icom, Vertex/Standard, Realm, Uniden and Maxon.

In 1999, Les Ettinger retired from Telepath's business operations, and his son Aaron Ettinger became the business manager. At that time, Telepath had about 40 employees and had become one of Motorola's top North American dealerships; Telepath's used equipment business then comprised about 20% of its business revenues.

In 2002, Telepath's sales declined, and cashflow suffered. Employees first accepted a 20% pay cut, but even this action was insufficient and personnel were subsequently laid off. Telepath became more than a year delinquent on its Motorola obligations and eight months delinquent on its rent due. By 2003, Telepath had reduced staff to 9 employees. In May/June

2003, Aaron Ettinger met with Peter Ajlouny and Andy Ajluni ("Ajlouny Parties") concerning possible private financing, and in July 2003, the Ajlouny Parties made a loan to Telepath with an understanding that they would also make a follow-on offer to purchase Telepath. The follow-on purchase offer was not forth-coming, while various bidders were being sent by the Ajlouny Parties to look over Telepath equipment/vehicles, and Telepath's management believed that the Ajlouny Parties were intending to scuttle and dismantle the company. Telepath's management ejected the Ajlouny Parties, who then threatened suit unless Telepath employees agreed to personally provide loan security.

In October 2003, Telepath filed its Chapter 11 petition.

Since its petition filing, Telepath has reorganized its business operations, has increased its sales volume, and has paid off substantial secured debt to Bank of Walnut Creek totaling about $145,000, and has negotiated a compromise paying off the Ajlouny Parties (with Court permission) in the sum of $220,000. Telepath has also improved its on-going relationship with Motorola by repaying in full its delinquent pre-Petition secured debt of approximately $220,000.

During the course of these Chapter 11 proceedings, Telepath has re-established continuing profitability for its business operations, and this Plan has followed. Telepath believes that this Plan will permit it to repay its creditors from proceeds of its operations.

### DESCRIPTION OF PLAN

The following description of the Plan is a summary only – all holders of claims and interests against the Debtors in this case should carefully read the actual Plan of Reorganization which accompanies this Disclosure Statement. The significant substantive premises are:

Payments to Creditors: Payments to secured and unsecured creditors under Debtors' plan will be as follows:

<u>Payments to Unsecured Creditors</u> -- All unsecured creditors are impaired under this Plan. Unsecured creditors are divided into 3 separate classes, based on their varying rights and claims in this case: Class 3a general unsecured creditors consist of all creditors having claims in excess of $1,000, Class 3b administrative claim creditors consist of all creditors having claims of $1,000 or less, and Class 3c consists of Motorola alone.

*CLASS 3a: General Unsecured Claims.* Claims in Class 3a are impaired under the Plan. Each Class 3a claimant will receive a series of payments totaling 25% of its allowed claim, paid over a period of 4 years, as follows: On the first full calendar month after the Effective Date of the Plan, Telepath will commence to make monthly payments of $2,300 into an account for the benefit of Class 3a creditors; promptly after the end of each full calendar quarter, the debtor will make a pro rata distribution from such impounded funds to all Class 3a creditors, continuing until each creditor has been paid 25% of its allowed claim. Should a Class 3a claim be objected to by Debtor or any other party with standing to object, the amount of money which would otherwise have been paid to such claimant will be retained by Debtor in the impound account until the Bankruptcy Court makes a final determination of allowability of such claim.

Debtor estimates that allowable Class 3a claims will total about $110,000.

*CLASS 3b: Administrative Convenience Claims.* Claims in Class 3b are impaired under the Plan. This Class consists of general unsecured creditors whose claims are $1,000 or less. IF A CREDITOR WITH A CLAIM OF $1,000 OR LESS DECLINES TO BE IN THIS CLASS, THAT CREDITOR WILL BE TREATED AS A CLASS 3a CLAIMANT; IF A CREDITOR WHOSE CLAIM EXCEEDS $1,000 SO DESIRES, IT MAY REDUCE ITS CLAIM TO $1,000 AND BE TREATED AS A CLASS 3b CLAIMANT. Each Class 3b claimant will receive a single payment totaling 20% of its allowed claim, paid on the Effective

Date of the Plan; *this is the only distribution that will be made to this Class.* Should a Class 3b claim be objected to by Debtor or any other party with standing to object, the amount of money which would otherwise have been paid to such claimant will be retained by Debtor in the impound account until the Bankruptcy Court makes a final determination of allowability of such claim.

Debtor estimates that allowable Class 3b claims will total about $20,000.

*CLASS 3c: Motorola.* The Class 3c claimant is unimpaired under the Plan. The Debtor is completely current with its revolving trade account with this creditor.

Payments to Secured/Administrative Creditors -- There are 3 creditor classes:

*CLASS 1a: Les Ettinger Note Claim.* Class 1a is impaired under this Plan. When Les Ettinger retired, he agreed to accept a secured promissory note in the sum of $1,748,000 in exchange for his equity interest in Telepath. During this case, that security interest may have expired. However, as a compromise to support confirmation of this Chapter 11 plan, this unpaid Class 1a Note claim will be reduced to $500,000, which sum will be secured by a blanket security interest in all Telepath assets; any payments on such obligation may only be made if Telepath is current on all distributions required to all Class 2 and Class 3 creditors. In addition, Les Ettinger shall receive 1,200,000 new shares of Reorganized Telepath on the Effective Date; no dividend may be distributed on account of such new shares until all Class 2 and Class 3 creditors are paid in full under the provisions of the confirmed Plan.

*CLASS 1b: Les Ettinger Rent Claim.* Class 1b is impaired under this Plan. The Class 1b claim is a Chapter 11 administrative claim which Les Ettinger has consented to allow to be paid over time pursuant to the Plan Payment Schedule set forth in Exhibit 2. The payment of this claim may be accelerated so long as Telepath is current on all distributions required to all Class 2 and Class 3 creditors and Telepath reasonably determines that its finances so permit.

*CLASS 1c: Les Ettinger Loan Claim.* Class 1c is impaired under this Plan. The Class 1c claim is a Chapter 11 administrative claim which Les Ettinger has consented to allow to be paid over time pursuant to the Plan Payment Schedule set forth in Exhibit 2. The payment of this claim may be accelerated so long as Telepath is current on all distributions required to all Class 2 and Class 3 creditors and Telepath reasonably determines that its finances so permit.

Treatment of Other Claims and Interests -- Other claims and interests are subject to the following classifications and treatment under the Plan:

Classified Priority Claims: Holders of Class 2 Priority Claims are not impaired under the Plan and will receive, on the Effective Date, cash equal to the allowed amount of their claims unless they elect other treatment. Debtors are unaware of any Class 2 priority claims.

Unclassified Administrative Claims: Unclassified Allowed Administrative Claims entitled to priority under Code §507(a)(1) will receive cash in the amount of such claims on the Effective Date, unless such claimants elect other treatment. Known administrative claims are as follows:

*Les Ettinger.* Les Ettinger is the lessor of the property where Telepath conducts its business. At the Petition date, Telepath owed rent arrearages of about $87,000 and since filing, Telepath has accrued additional rent arrearages of $78,000; Telepath has assumed (or assumes as part of Plan confirmation), its lease with Les Ettinger. Although this administrative claim would be entitled to priority payment treatment in either Plan confirmation or any liquidation analysis, Les Ettinger has agreed to treat this administrative claim as a classified claim in Class 1b and to accept payments over time pursuant to Exhibit 2. In addition, Les Ettinger has previously provided post-Petition financing to Telepath since the corporation has been without an operating credit facility. Telepath has borrowed $178,000 from Les Ettinger with Court approval

during the course of this Chapter 11 case. Although this administrative claim would be entitled to priority payment treatment in either Plan confirmation or any liquidation analysis, Les Ettinger has agreed to treat this administrative claim as a classified claim in Class 1c and to accept payments over time pursuant to Exhibit 2.

*Law Office of Charles Logan.* Debtor previously retained the Law Offices of Charles Logan as its bankruptcy counsel, and paid a retainer of $25,000 to that firm. Debtor is informed that said attorneys estimate they are owed $250,000 – but Debtor has never received any billing statements from said attorneys and cannot confirm these services, and reserves any rights to object to such fees. Fees owed to said law firm can only be paid after Court approval. Said law firm has agreed to accept payments over time in accordance with Exhibit 2.

*Miller Morton Caillat & Nevis.* Debtor engaged said law firm as special counsel to seek damages against Microvoice Corporation; Telepath obtained a settlement of $30,000. Said law firm is owed about $6,000 for its services; fees owed to said law firm can only be paid after Court approval, but will be paid immediately upon such approval.

*Campeau Goodsell Smith.* Debtor has very recently retained the law firm of Campeau Goodsell Smith as its bankruptcy counsel, and paid a retainer of $20,000 to that firm. There is no sum presently owing to said attorneys. Fees owed to said law firm can only be paid after Court approval, and said law firm will accept payments over time if necessary.

*The Siress Group.* Debtor previously retained The Siress Group as its accountants. Siress has filed three interim fee applications totaling $121,000, and estimates that it will incur fees of about $20,000 through Plan confirmation. Fees owed to said accounting firm can only be paid after Court approval. Said accounting firm has agreed to accept payments over time in accordance with Exhibit 2.

1      <u>Unclassified Tax Claims</u>:  Unclassified Allowed Tax Claims entitled to priority

2 under Code §507(a)(7) will be paid in cash in quarterly installments commencing on the next

3 quarterly payment date after the Effective Date sufficient to pay such Claims with interest in full

4 over a period not exceeding six years after the date of assessment.  Unless otherwise agreed by

5 the Reorganized Debtor and the claim holder, deferred payment on account of each such priority

6 tax claim shall be made in equal quarterly installments commencing on the last day of the first full

7 calendar quarter after the Effective Date.  Such monthly installments shall include interest at the

8 rates regularly prescribed by the taxing authorities.

9 **MEANS FOR IMPLEMENTING THE PLAN**

10      The funds to implement the Plan will come from Debtor's business operations.

11      Debtor's Payment Feasibility Analysis.  As set forth above, the funds necessary to

12 implement the Plan will be derived from Debtor's on-going business operations.  Exhibit 1 to this

13 Disclosure Statement is a historical summary of Debtor's business operations for calendar year

14 2008, which Debtor believes to be representative of its current and on-going operations.  Exhibit

15 2 to this Disclosure Statement is a projection of Debtor's expected business operations for

16 calendar years 2009, 2010 and 2011 – including anticipated payment schedules.  Based on the

17 foregoing analysis, Debtor believes that it will make all anticipated creditor payments.

18      Officers/Shareholders.  On the Effective Date, all outstanding Telepath stock shares

19 will be cancelled; new Telepath stock will be issued and 1,200,000 shares will be tendered to Les

20 Ettinger as partial resolution of his Class 1a claim.  Aaron Ettinger will continue to manage day-

21 to-day operations at his present annual compensation structure, projected in Exhibit 2.

22      Payment Mechanism.  Debtor or its counsel, at Debtor's election, will act as the

23 disbursing agent under this Plan, without bond.  The funds to be distributed under the Plan shall

1  be under management and control of the disbursing agent.  At each of the anticipated funds

2  distribution events, the disbursing agent shall calculate the distribution due to the holders of

3  allowed claims, shall round all amounts for distributions to the nearest whole dollar amount, and

4  shall forward such funds distributions to the last known address of claimant.  Unclaimed property

5  will be placed in the disbursing agent's separate blocked account for benefit of the holders of

6  allowed claims entitled thereto under the terms of the Plan.  Unclaimed property shall be held

7  solely for the benefit of the holders of allowed claims that have failed to claim such property.

8  Upon presentation of proper proof by a claimant of entitlement to unclaimed property, unclaimed

9  property due to the claimant shall be released and paid to such claimant.  Notwithstanding the

10  foregoing, six months after a distribution becomes unclaimed property, claimants shall cease to be

11  entitled to unclaimed property in which they previously had an interest and such unclaimed

12  property shall become Debtor's property.

13  On the Effective Date, all property of the estate shall vest in Debtor pursuant to Code

14  sec. 1141(b), provided that the vesting of said property shall be without prejudice and shall not

15  act as a bar to a post-Confirmation motion to convert this case to one under Chapter 7 by the

16  United States Trustee or any other party in interest upon appropriate grounds, and upon granting

17  of such motion, the Plan shall terminate and the Chapter 7 estate shall consist of all remaining

18  property of the Chapter 11 estate not already administered.  Such remaining property shall be

19  administered by the Chapter 7 trustee as prescribed in Chapter 7 of the Bankruptcy Code.  Debtor

20  reserves all rights to oppose any such motion.

21  Except as provided in the Confirmation Order, on the Effective Date, Debtor will be

22  vested with all of the property of the Estate free and clear of all claims, liens, charges and other

23  interests of creditors arising prior to the Petition date, and will continue to conduct its affairs and

1  may obtain credit, incur debt, grant security interests and liens, and otherwise acquire and dispose

2  of assets.  Debtor shall be free of any restriction imposed by the Bankruptcy Court, the

3  Bankruptcy Code, the Bankruptcy Rules or the Local Rules, other than the obligations set forth in

4  this Plan and any post-Confirmation pre-Final Decree reporting required by the U. S. Trustee.

5  **TAX IMPLICATIONS OF THE PLAN**

6  The tax implications of the transactions described under this Plan are set forth below.

7  This discussion is for informational purposes only, however, and does not represent an opinion of

8  counsel; further, due to lack of applicable legal precedent, the possibility of changes in the law and

9  differences in the nature of individual creditors' claims and methods of accounting, the tax

10  consequences described herein are subject to significant uncertainties. *EACH HOLDER OF A*

11  *CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS OR HER OWN TAX*

12  *ADVISOR WITH REGARD TO THE TAX CONSEQUENCES OF THE PLAN.*

13  Under the Internal Revenue Code of 1986 (the "Tax Code"), a taxpayer generally must

14  include in gross income the amount of any discharge of indebtedness income realized during the

15  taxable year, except to the extent payment of such indebtedness would have resulted in a tax

16  deduction.  Tax Code §108 provides however that when a discharge of indebtedness occurs in a

17  case under the Bankruptcy Code, gross income does not include any amount that would otherwise

18  be included by reason of the discharge of indebtedness.  Instead, a taxpayer is required to reduce

19  certain end-of-year tax attributes (e.g., net operating loss) for federal income tax purposes by the

20  amount of discharge of indebtedness income it is allowed to exclude.

21  With respect to the anticipated income tax consequences for the debtors under the

22  Plan, holders of non-classified claims and holders of priority wage claims (if any) generally will be

23  paid on the Effective Date or subsequently upon their election.  The allowed amount (if any) of

secured claimants' secured claims will be paid upon liquidation of their underlying collateral. Claims that are paid in full should not result in discharge of indebtedness income. In contrast, satisfaction of the unsecured claims may or may not result in a discharge of indebtedness. Because the discharge will occur pursuant to the Plan, Debtors will not be required to include discharge of indebtedness income in their taxable income; however, any tax attributes such as net operating losses will be reduced by the excess, if any, of the amount of the discharge of indebtedness over the fair market value of other property transferred in satisfaction of such claims. As of the date of this Disclosure Statement, Debtor has been unable to determine the amount of any allowable accrued net operating losses.

With respect to income tax consequences for individual creditors under the Plan, such consequences will depend upon, among other things, consideration to be received by the creditor, whether the creditor reports income using the accrual or cash method, and on whether the creditor has taken a bad debt or worthless security deduction with respect to its claim. Holders of unsecured claims may not ultimately be completely satisfied under the Plan and may therefore recognize gain or loss equal to the difference between the ultimate sum of payments received and the adjusted tax basis of their underlying claim(s). The character of any gain or loss as capital or ordinary gain or loss will depend upon a number of factors; each creditor recognizing gain or loss pursuant to the Plan should consult his or her tax advisor as to applicability of these factors to its situation. Creditors will recognize ordinary income to the extent that they receive any cash or property that is attributable to accrued but unpaid interest that has not already been included for federal income tax purposes in such creditor's taxable income. A creditor whose claim includes accrued interest and who receives consideration which is less than the amount of its claim must allocate such consideration between principal and interest for income tax purposes. In the event

that the amount of cash and other property attributable to interest on a creditor's claim is less than the amount previously included as interest on the claim in the creditor's federal taxable income, the unpaid interest may be deducted, generally as a loss or as an adjustment to a reserve for bad debts. Since the Plan provides for principal-only reduction, no interest income should accrue to creditors under the Plan and Debtor should not be required to withhold any amounts otherwise required by law to be withheld from payments to certain claimants nor should any claimants be required to provide mandated tax information to Debtor as a condition of receiving distributions under the Plan. With respect to all distributions under the Plan, Debtor will comply with all applicable reporting requirements under the Tax Code.

### THE "BEST INTEREST" TEST AND THE LIQUIDATION ANALYSIS

Notwithstanding acceptance of the Plan by the requisite statutory majorities, in order to confirm the Plan the Bankruptcy Court must independently determine that the Plan is in the best interests of all impaired classes of Claims and Interests. The "best interest" test requires that the Plan provide to each member of each impaired Class a recovery that has a present value of at least equal to the present value of the distribution which such a member would receive if the debtors' assets were liquidated under Chapter 7 of the Bankruptcy Code.

In performing this analysis, the Bankruptcy Court must first determine the dollar amount that would be generated from liquidation of Debtor's assets, add this amount to cash held by Debtors, then deduct the costs of liquidation. Under Chapter 7, liquidation costs would likely include the fees for a trustee, as well as those of counsel and other professionals retained by the trustee, and selling expenses. These claims would have to be paid in full before any payment to unsecured creditors. In addition, any unpaid obligations incurred by Debtor during its Chapter 11 case would have to be paid before any payment to unsecured creditors.

1    Debtor believes that the net proceeds of liquidation of its assets would be substantially

2    less than the amounts to be paid under this Plan.

3                                **EFFECT OF CONFIRMATION**

4            Upon Confirmation, all property of the Estate, including all causes of action, will revest

5    in Debtor free of all Claims and Interests of creditors except for obligations that are created or

6    preserved under the Plan and that are secured by assets of the Estate.  Except as expressly limited

7    in this Plan, all Debtor's claims, defenses and causes of action may be pursued after Confirmation.

8                                **RETENTION OF JURISDICTION**

9            After Confirmation, the Plan provides that the Bankruptcy Court retains jurisdiction to

10   enforce the provisions, purposes, and intent of the Plan including matters that relate to: (1) any

11   allowance, disallowance or settlement of claims and objections thereto; (2) any assumption,

12   assignment or rejection of any executory contract or unexpired lease; (3) any rights, title or

13   interests of Debtors or their Estate in any property; (4) any right, power, action or duty of

14   Debtors or any Committee under this Plan; (5) any determination or estimation necessary or

15   appropriate under Code §505; (6) any requests for payment of claims entitled to priority under

16   Code §505(a); (7) resolution of controversies and disputes arising out of interpretation of this

17   Plan; (8) implementation of the provisions of this Plan; (9) modification of the Plan pursuant to

18   Code §1127; (10) adjudication of any causes of action, including avoiding power actions brought

19   by Debtors; (11) such other matters as may be provided under the Bankruptcy Code, the Plan, the

20   Confirmation Order, or other applicable law; and (12) entry of a Final Decree closing this case.

21   In addition, Debtors will file post-Confirmation reports with the Court in such format as may be

22   acceptable to the Court, and will pay quarterly U. S. Trustee fees until entry of a Final Decree.

23           A quarterly fee for the Estate will be paid by Debtor to the United States Trustee for

each quarter (including any fraction thereof) until this case is converted, dismissed or closed pursuant to a final decree, pursuant to 11 U.S.C. sec. 1930(a)(6).

Not later than 30 days after the end of each calendar quarter which ends after the Effective Date, Debtor shall file and serve upon the United States Trustee a quarterly post-Confirmation status report in substantially the form provided by the Office of the United States Trustee. Further reports shall be filed 30 days after the end of every calendar quarter thereafter until entry of a final decree, unless otherwise ordered by the Court.

## DISCLAIMER

*THE ONLY REPRESENTATIONS AUTHORIZED BY DEBTOR CONCERNING THE VALUE OF ASSETS, THE EXTENT OF LIABILITIES OR ANY OTHER FACTS MATERIAL TO DEBTOR'S PLAN ARE THOSE REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT. ALL STATEMENTS AND REPRESENTATIONS IN THIS DISCLOSURE STATEMENT, INCLUDING THOSE RELATING TO FINANCIAL, BUSINESS AND ACCOUNTING DATA, ARE DRAWN FROM DEBTOR'S BOOKS AND RECORDS AND, EXCEPT AS OTHERWISE SPECIFIED, IS UNAUDITED. DEBTOR BELIEVES THAT SUCH INFORMATION IS CORRECT AND FAIRLY PRESENTED, BUT CANNOT WARRANT THAT THE INFORMATION HEREIN IS ENTIRELY FREE FROM INACCURACY.*

DATED: February 18, 2009          TELEPATH CORPORATION


By      /s/ Aaron Ettinger
          Aaron Ettinger, President

**Exhibit 1**

# Telepath Corporation
## Forecast
### Through 12/2009

| | Actuals | | | | | | | | | | Budget | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Jan-08 | Feb-08 | Mar-08 | Apr-08 | May-08 | Jun-08 | Jul-08 | Aug-08 | Sep-08 | Oct-08 | Nov-08 | Dec-08 |
| **TOTAL SALES/REVENUE** | 342,721 | 410,213 | 305,858 | 252,572 | 375,458 | 325,446 | 306,844 | 455,270 | 340,824 | 383,768 | 300,000 | 340,000 |
| Cost of Goods Sold Percentage | 0.54 | 0.44 | 0.33 | 0.42 | 0.44 | 0.67 | 0.33 | 0.63 | 0.54 | 0.24 | 0.48 | 0.48 |
| **TOTAL COST OF GOODS SOLD** | 214,246 | 181,875 | 101,828 | 105,716 | 165,163 | 216,737 | 128,960 | 289,464 | 184,205 | 91,041 | 144,000 | 163,000 |
| Operating Expenses | | | | | | | | | | | | |
| Salaries | 124,869 | 76,581 | 96,863 | 94,932 | 108,067 | 87,773 | 134,769 | 104,629 | 108,023 | 116,605 | 88,000 | 100,000 |
| Payroll Fees | 250 | 987 | 683 | 702 | 871 | 737 | 742 | 960 | 767 | 1,500 | 745 | 745 |
| Insurance - | 14,471 | 20,788 | 669 | 13,035 | 12,341 | 11,886 | 10,140 | 13,089 | 10,507 | 7,394 | 13,000 | 10,000 |
| Payroll Tax | 15,242 | 7,658 | 8,417 | 7,600 | 6,773 | 7,346 | 10,569 | 7,466 | 7,207 | 7,559 | 7,040 | 8,000 |
| Rent Expense | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 |
| Utilities | 967 | 1,018 | 2,560 | 749 | 802 | 1,018 | 1,238 | 1,198 | 1,291 | 1,200 | 1,200 | 1,200 |
| Security | - | - | - | - | - | - | - | - | - | - | - | - |
| Janitorial & Other Contract Services | 290 | 300 | 425 | 450 | 644 | 658 | 648 | 813 | 775 | 390 | 540 | 540 |
| Other Occupancy Cost | 401 | 401 | - | 450 | 545 | 308 | 1,161 | 568 | - | - | - | - |
| Advertising | 538 | 927 | 2,717 | 158 | 2,554 | 7,341 | 4,689 | 2,816 | 4,919 | 3,661 | 3,500 | 3,500 |
| Telephone Expense | 2,815 | 3,964 | 2,639 | 2,651 | 4,500 | 5,243 | 4,920 | 6,808 | 2,828 | 4,766 | - | - |
| Legal Fees | - | - | - | - | 2,349 | - | - | - | - | - | - | - |
| Accounting Fees | 5,177 | 4,364 | 4,122 | 2,509 | 1,332 | - | - | - | - | - | 4,000 | 4,000 |
| Other Operating Fees | 764 | 752 | 309 | 495 | 196 | 387 | 398 | 330 | 166 | 390 | 400 | 400 |
| Office Supplies | 926 | 928 | 925 | 925 | 925 | 925 | 2,360 | 730 | 730 | 730 | 730 | 730 |
| Depreciation Expense | 3,603 | 3,700 | 315 | 3,007 | 805 | 767 | 338 | 755 | 337 | 1,774 | 500 | 800 |
| Travel & Entertainment | 4,597 | 662 | 1,116 | 771 | 1,419 | 1,116 | 568 | 910 | 876 | 3,287 | 1,000 | 1,000 |
| Credit Card And Other Service Charges | 439 | 453 | 573 | 133 | 1,277 | 20 | 1,338 | 18 | 168 | 1,232 | 575 | 576 |
| Dues & Subscriptions | 163 | 2,494 | 2,467 | 1,287 | 676 | 1,527 | 333 | 200 | 124 | 416 | 600 | 600 |
| Postage / Shipping Expenses | 1,719 | 1,556 | 878 | 237 | 765 | - | 124 | 200 | 124 | 1,905 | 600 | 500 |
| Taxes Property | - | - | - | - | - | - | - | - | 542 | 961 | - | - |
| Other Business Taxes & Fees | 3,054 | 2,678 | 1,202 | 1,394 | 2,262 | 2,286 | 10,842 | 2,614 | 1,516 | 1,039 | 1,500 | 1,500 |
| Repairs & Maintenance | - | 6,681 | 3 | 3 | - | - | 46 | - | 85 | 99 | - | - |
| Bad Debts | - | - | - | - | - | - | - | - | - | - | - | - |
| Vehicle Expense | 2,034 | 5,940 | 411 | 3,044 | 4,323 | 7,687 | 6,349 | 5,851 | 5,010 | 9,619 | 4,000 | 4,000 |
| Laundry & Linen | 571 | 593 | 720 | 16 | 627 | 964 | 564 | 613 | 729 | 1,638 | 700 | 700 |
| State Income Tax | - | - | - | 61 | - | - | - | - | - | - | - | - |
| Internal Expense | - | - | 2,278 | 5,750 | - | - | - | - | - | - | - | - |
| Other Expense | 3,383 | 381 | 3,755 | - | 574 | 523 | 89 | 97 | 230 | 230 | 300 | 300 |
| **TOTAL OPERATING EXPENSES** | 192,873 | 149,594 | 140,934 | 146,849 | 160,970 | 145,103 | 199,190 | 157,500 | 152,653 | 178,361 | 136,330 | 148,590 |
| **TOTAL COST OF GOODS SOLD/EXPENSES** | 407,119 | 331,469 | 242,762 | 253,568 | 326,133 | 361,840 | 328,150 | 446,964 | 336,858 | 269,402 | 280,330 | 309,590 |
| **TOTAL NET INCOME** | (64,398) | 78,744 | 63,097 | (995) | 49,325 | (36,394) | 56,494 | 9,307 | 3,966 | 114,366 | 19,670 | 30,410 |
| **Additional Payments** | | | | | | | | | | | | |

Stress fee application (to be approved)

UST Fees

Ettinger Chapter 11 Loan

Ettinger Rent Pre/Post

Logan fee application (to be approved)

Miller Motion fee application (to be approved)

Prepetition General Unsecured claims

Prepetition General Unsecured Administrative Claims

| | Nov-08 | Dec-08 |
|---|---|---|
| | 19,670 | 30,410 |

**Exhibit 2**

# Telepath Corporation
## Forecast
### Through 12/2009

| | 2009 Budget | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Jan-09 | Feb-09 | Mar-09 | Apr-09 | May-09 | Jun-09 | Jul-09 | Aug-09 | Sep-09 | Oct-09 | Nov-09 | Dec-09 |
| **TOTAL SALES/REVENUE** | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 |
| Cost of Goods Sold Percentage | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 |
| **TOTAL COST OF GOODS SOLD** | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 |
| **Operating Expenses** | | | | | | | | | | | | |
| Salaries | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 |
| Payroll Fees | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 |
| Insurance | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Payroll Tax | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 |
| Rent Expense | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 |
| Utilities | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 |
| Security | - | - | - | - | - | - | - | - | - | - | - | - |
| Janitorial & Other Contract Services | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 |
| Other Occupancy Cost | - | - | - | - | - | - | - | - | - | - | - | - |
| Advertising | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Telephone Expense | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| Legal Fees | 3,000 | 2,000 | 2,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 3,000 | 1,500 | 1,500 |
| Accounting Fees | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Operating Fees | - | - | - | - | - | - | - | - | - | - | - | - |
| Office Supplies | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Depreciation Expense | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 |
| Travel & Entertainment | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| Credit Card And Other Service Charges | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Dues & Subscriptions | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 |
| Postage / Shipping Expenses | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| Taxes Property | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Other Business Taxes & Fees | - | - | - | - | - | - | - | - | - | - | - | - |
| Repairs & Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Bad Debts | - | - | - | - | - | - | - | - | - | - | - | - |
| Vehicle Expense | 4,000 | 4,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Laundry & Linen | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 |
| State Income Tax | - | - | - | - | - | - | - | - | - | - | - | - |
| Interest Expense | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Expense | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| **TOTAL OPERATING EXPENSES** | 160,340 | 149,340 | 146,840 | 146,340 | 146,340 | 146,340 | 146,340 | 146,340 | 146,340 | 147,840 | 146,340 | 146,340 |
| **TOTAL COST OF GOODS SOLD/EXPENSES** | 294,340 | 293,340 | 290,840 | 290,340 | 290,340 | 290,340 | 290,340 | 290,340 | 290,340 | 291,840 | 290,340 | 290,340 |
| **TOTAL NET INCOME** | 5,660 | 6,660 | 9,160 | 9,660 | 9,660 | 9,660 | 9,660 | 9,660 | 9,660 | 8,160 | 9,660 | 9,660 |
| **Additional Payments** | | | | | | | | | | | | |
| Stress fee application (to be approved) | (5,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) | (3,000) |
| UST Fees | | | | | | | | | | | | |
| Ellinger Chapter 11 Loan | | | (1,000) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) |
| Ellinger Rent Pre/Post | | | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) |
| Logan fee application (to be approved) | | | | | | | | | | | | |
| Miller Morton fee application (to be approved) | | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) |
| Prepetition General Unsecured claims | | | | | | | | | | | | (1,000) |
| Prepetition General Unsecured Administrative Claims | | (3,423) | | | | | | | | | | |
| | 660 | 237 | 160 | 1,680 | 1,680 | 1,680 | 1,680 | 1,680 | 1,680 | 1,680 | 1,680 | 2,680 |

# Telepath Corporation
## Forecast
### Through 12/2009

| | 2010 Budget | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Jan-10 | Feb-10 | Mar-10 | Apr-10 | May-10 | Jun-10 | Jul-10 | Aug-10 | Sep-10 | Oct-10 | Nov-10 | Dec-10 |
| **TOTAL SALES/REVENUE** | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 |
| Cost of Goods Sold Percentage | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 |
| **TOTAL COST OF GOODS SOLD** | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 |
| **Operating Expenses** | | | | | | | | | | | | |
| Salaries | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 |
| Payroll Fees | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 |
| Insurance - | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Payroll Tax | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 |
| Rent Expense | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 |
| Utilities | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 |
| Security | | | | | | | | | | | | |
| Janitorial & Other Contract Services | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 |
| Other Occupancy Cost | | | | | | | | | | | | |
| Advertising | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Telephone Expense | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Legal Fees | | | | | | | | | | | | |
| Accounting Fees | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Other Consulting Fees | | | | | | | | | | | | |
| Office Supplies | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Depreciation Expense | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 |
| Travel & Entertainment | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| Credit Card And Other Service Charges | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 |
| Dues & Subscriptions | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 |
| Postage / Shipping Expenses | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Taxes Property | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Other Business Taxes & Fees | | | | | | | | | | | | |
| Repairs & Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Bad Debts | | | | | | | | | | | | |
| Vehicle Expense | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Laundry & Linen | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 |
| State Income Tax | | | | | | | | | | | | |
| Interest Expense | | | | | | | | | | | | |
| Other Expense | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| **TOTAL OPERATING EXPENSES** | 147,540 | 147,540 | 147,540 | 147,540 | 147,540 | 147,540 | 147,540 | 147,540 | 147,540 | 149,040 | 147,540 | 147,540 |
| **TOTAL COST OF GOODS SOLD/EXPENSES** | 291,540 | 291,540 | 291,540 | 291,540 | 291,540 | 291,540 | 291,540 | 291,540 | 291,540 | 293,040 | 291,540 | 291,540 |
| **TOTAL NET INCOME** | 8,460 | 8,460 | 8,460 | 8,460 | 8,460 | 8,460 | 8,460 | 8,460 | 8,460 | 6,960 | 8,460 | 8,460 |
| **Additional Payments** | | | | | | | | | | | | |
| Stress fee application (to be approved) | | | | | | | | | | | | |
| UST Fees | | | | | | | | | | | | |
| Ellinger Chapter 11 Loan | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) |
| Ellinger Rent Pro/Post | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) |
| Logan fee application (to be approved) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) |
| Miller Morton fee application (to be approved) | | | | | | | | | | | | |
| Prepetition General Unsecured claims | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) |
| Prepetition General Unsecured Administrative Claims | | | | | | | | | | | | |
| | 2,960 | 2,960 | 2,960 | 2,960 | 2,960 | 2,960 | 2,960 | 2,960 | 2,960 | 1,460 | 2,960 | 2,960 |

| | | | | | | 2011 Budget | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Jan-11 | Feb-11 | Mar-11 | Apr-11 | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Nov-11 | Dec-11 |
| **TOTAL SALES/REVENUE** | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 |
| Cost of Goods Sold Percentage | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 |
| **TOTAL COST OF GOODS SOLD** | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 |
| **Operating Expenses** | | | | | | | | | | | | |
| Salaries | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 |
| Payroll Fees | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 |
| Insurance | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,100 | 10,100 | 10,100 | 10,100 | 10,100 | 10,100 | 10,100 |
| Payroll Tax | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 |
| Rent Expense | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 |
| Utilities | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 |
| Security | - | - | - | - | - | - | - | - | - | - | - | - |
| Janitorial & Other Contract Services | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 |
| Other Occupancy Cost | - | - | - | - | - | - | - | - | - | - | - | - |
| Advertising | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Telephone Expense | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Legal Fees | - | - | - | - | - | - | - | - | - | - | - | - |
| Accounting Fees | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Other Consulting Fees | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Office Supplies | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Depreciation Expense | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 |
| Travel & Entertainment | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| Credit Card And Other Service Charges | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 |
| Dues & Subscriptions | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 |
| Postage / Shipping Expenses | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Taxes Property | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Other Business Taxes & Fees | - | - | - | - | - | - | - | - | - | - | - | - |
| Repairs & Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Bad Debts | - | - | - | - | - | - | - | - | - | - | - | - |
| Vehicle Expense | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Laundry & Linen | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 |
| State Income Tax | - | - | - | - | - | - | - | - | - | - | - | - |
| Interest Expense | - | - | - | - | - | - | - | - | - | - | - | - |
| Office Expense | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| **TOTAL OPERATING EXPENSES** | 147,540 | 147,540 | 147,540 | 147,540 | 147,540 | 147,640 | 147,640 | 147,640 | 147,640 | 150,140 | 147,140 | 147,140 |
| **TOTAL COST OF GOODS SOLD/EXPENSES** | 291,540 | 291,540 | 291,540 | 291,540 | 291,540 | 291,640 | 291,640 | 291,640 | 291,640 | 294,140 | 291,140 | 291,140 |
| **TOTAL NET INCOME** | 8,460 | 8,460 | 8,460 | 8,460 | 8,460 | 8,360 | 8,360 | 8,360 | 8,360 | 5,680 | 8,860 | 8,860 |
| **Additional Payments** | | | | | | | | | | | | |
| Sinas fee application (to be approved) | | | | | | | | | | | | |
| UST Fees | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) |
| Ellinger Chapter 11 Loan | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) |
| Ellinger Rent Pre/Past | | | | | | | | | | | | |
| Logan fee application (to be approved) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) |
| Miller Morton fee application (to be approved) | | | | | | | | | | | | |
| Prepetition General Unsecured claims | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (750) | | | | | | |
| Prepetition General Unsecured Administrative Claims | | | | | | | | | | | | |
| | 2,960 | 2,960 | 2,960 | 2,960 | 2,960 | 3,110 | 3,860 | 3,860 | 3,860 | 1,360 | 4,360 | 4,360 |

Telepath Corporation
Forecast
Through 1/2/2009

**2012 Budget**

| | Jan-12 | Feb-12 | Mar-12 | Apr-12 | May-12 | Jun-12 | Jul-12 | Aug-12 | Sep-12 | Oct-12 | Nov-12 | Dec-12 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL SALES/REVENUE | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | |
| Cost of Goods Sold Percentage | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | 0.48 | |
| TOTAL COST OF GOODS SOLD | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 | |
| Opening Expenses | | | | | | | | | | | | | |
| Salaries | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | 105,000 | |
| Payroll Fees | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | 745 | |
| Insurance | 10,100 | 10,100 | 10,100 | 10,100 | 10,100 | 10,100 | 10,100 | 10,100 | 10,100 | 10,100 | 10,100 | 10,100 | |
| Payroll Tax | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | 8,400 | |
| Rent Expense | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | |
| Utilities | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | |
| Security | - | - | - | - | - | - | - | - | - | - | - | - | |
| Janitorial & Other Contract Services | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | 540 | |
| Other Occupancy Cost | - | - | - | - | - | - | - | - | - | - | - | - | |
| Advertising | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | |
| Telephone Expense | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | |
| Legal Fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| Accounting Fees | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | |
| Other Consulting Fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| Office Supplies | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | |
| Depreciation Expense | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | 730 | |
| Travel & Entertainment | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | |
| Credit Card And Other Service Charges | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | |
| Dues / Subscriptions | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | 575 | |
| Postage / Shipping Expense | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | |
| Taxes-Property | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | |
| Other Business Taxes & Fees | - | - | - | - | - | - | - | - | - | - | - | - | |
| Repairs & Maintenance | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | |
| Bad Debts | - | - | - | - | - | - | - | - | - | - | - | - | |
| Vehicle Expense | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | |
| Laundry & Linen | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | 550 | |
| State Income Tax | - | - | - | - | - | - | - | - | - | - | - | - | |
| Interest Expense | - | - | - | - | - | - | - | - | - | - | - | - | |
| Other Expense | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | |
| TOTAL OPERATING EXPENSES | 147,140 | 147,140 | 147,140 | 147,140 | 147,140 | 147,140 | 147,140 | 147,140 | 147,140 | 147,140 | 147,140 | 147,140 | |
| TOTAL COST OF GOODS SOLD/EXPENSES | 291,140 | 291,140 | 291,140 | 291,140 | 291,140 | 291,140 | 291,140 | 291,140 | 291,140 | 291,140 | 291,140 | 291,140 | |
| TOTAL NET INCOME | 8,860 | 8,860 | 8,860 | 8,860 | 8,860 | 8,860 | 8,860 | 8,860 | 8,860 | 8,860 | 8,860 | 8,860 | |
| Additional Payments | | | | | | | | | | | | | |
| Stress fee application (to be approved) | | | | | | | | | | | | | |
| UST Fees | | | | | | | | | | | | | |
| Ettinger Chapter 11 Loan | (3,000) | (3,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (105,500) |
| Ettinger Rent Pre/Post | (2,000) | (2,500) | (500) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (75,500) |
| Logan fee application (to be approved) | (1,000) | (1,000) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (61,000) |
| Miller Morton fee application (to be approved) | | | | | | | | | | | | | (6,000) |
| Prepetition General Unsecured claims | | | | | | | | | | | | | (26,750) |
| Prepetition General Unsecured Administrative Claims | | | | | | | | | | | | | (3,423) |
| | 2,860 | 2,860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | 860 | |

**Exhibit 3**

# ALTERNATIVE LIQUIDATION ANALYSIS

| Assets: | Liquidation Valuation | Plan *Effective* Valuation |
|---|---|---|
| Accounts Receivable | $ 670,000 | |
| Equipment/Assets | 20,000 | |
| Total Asset Value: | $ 690,000 | $ 730,000 |
| | | |
| Less Ch. 11 Admin. claims | | |
| Logan | ( 250,000) | ( 250,000) |
| Siress | ( 20,000) | ( 20,000) |
| Accrued Rent | ( 165,000) | ( 165,000) |
| Post-Petition Loans | ( 178,000) | ( 178,000) |
| Less Ch. 7 Admin. expenses | ( 40,000) | n/a |
| Net Available for Pre-Petition Claims | $ 37,000 | $ 117,000 |
| | | |
| Priority Debt (taxes) (filed) | 17,000 | 17,000 |
| Accrued Rent | | |
| Post-Petition Loan | | |
| Net Available for Unsecured Creditors | $ 20,000 | $ 100,000 |
| | | |
| Unsecured Creditors (est) | $ 2,170,000 | $ 400,000 |
| Estimated Unsecured Payment per Dollar Owed | $ 0.01 | $ 0.25 |