ELAINE M. SEID (SBN 72588)
McPharlin Sprinkles & Thomas, LLP
10 Almaden Blvd, Suite 1460
San Jose, CA  95113
Telephone  (408) 293-1900
Facsimile (408) 293-1999
Email: emseid@mstpartners.com

Practice Administrator for
The Law Offices of Charles E. Logan

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re TELEPATH CORPORATION<br><br>Debtor. | ) Bankruptcy No. 03-56788-ASW11<br>) Chapter 11<br>)<br>) **Hearing**:<br>) Date:   8/31/2009<br>) Time:   2:15 p.m.<br>) Judge:  Hon. Arthur S. Weissbrodt<br>) |

## FIRST & FINAL APPLICATION FOR COMPENSATION BY THE LOGAN LAW OFFICE AS ATTORNEYS FOR DEBTOR

### I.   INTRODUCTION

The Practice Administrator for the Law Offices of Charles E. Logan ("Logan Firm") hereby submits this first and final application for compensation ("Fee Application") for the Logan Firm as attorney for the debtor ("Debtor" or "Telepath") for the period from October 20, 2003 through September 8, 2008 ("Application Period") requesting approval of **$164,347.50** in fees and **$14,342,23** for reimbursement of costs advanced for a total compensation of **$178,689.73**, for which the Logan Firm received payment of **$33,866.36**, leaving an unpaid balance of **$144,823.37**.  The Debtor was authorized to employ the Logan Firm as its bankruptcy attorneys by the Bankruptcy

1

FIRST & FINAL APPLICATION FOR COMPENSATION BY THE LOGAN LAW OFFICE AS ATTORNEYS FOR DEBTOR
Case No. 03-56788-ASW11                                                                                                  In Re Telepath Corporation

Case: 03-56788    Doc# 419    Filed: 08/03/09    Entered: 08/03/09 01:27:52    Page 1 of 16

Court's Order dated November 3, 2003, a copy of which is attached hereto as Exhibit A.

Charles E. Logan ("Logan"), the sole proprietor of the Logan Firm, died on September 12, 2008. The Logan Firm ceased business operations and its offices closed as soon as his death became known. On October 17, 2008 the Probate Division of the Santa Clara County Superior Court appointed Elaine M. Seid as the Practice Administrator for the Logan Firm ("PA"). The PA's responsibilities include collecting Logan Firm's assets, including the professional compensation earned by the Logan Firm representing the Debtor herein.

## II. GENERAL OVERVIEW OF TELEPATH CASE

The Debtor is in the business of selling and servicing communication devices, primarily Motorola radios. Debtor was founded and wholly owned by Les Ettinger ("Les"). During or about 1999 Les sold his shares in the Debtor to his son, Aaron Ettinger ("Aaron") taking back a promissory note in the principal amount of $1,950,000. Les also owns and leases to Telepath the building where Telepath operates. Aaron successfully expanded Debtor's business for a number of years. However, Debtor's business was seriously and adversely impacted when its customers faltered or closed during the early 2000's and Debtor encountered financial difficulties.

Debtor first consulted with the Logan Firm during July 2003 when Aaron was considering financing arrangements with Peter Ajlouny and Andrew Ajluni ("Ajlouny Parties"). The Ajlouny Parties advanced $200,000 to Debtor for operating capital and were given options to acquire ownership interests in Telepath and Aaron's other related corporation, Timeslot Trunking, LLC ("Timeslot") under a financing arrangement

2

FIRST & FINAL APPLICATION FOR COMPENSATION BY THE LOGAN LAW OFFICE AS ATTORNEYS FOR DEBTOR
Case No. 03-56788-ASW11                                                       In Re Telepath Corporation

Case: 03-56788    Doc# 419    Filed: 08/03/09    Entered: 08/03/09 01:27:52    Page 2 of 16

("Ajlouny Parties Financing.") The Logan Firm was paid in full for this work. Neither this work nor the payment for this work is included in this Fee Application. Although entries related to this work appear on the Logan Firm's actual billing records (at Exhibit C), these entries were netted out for purposes of this Fee Application.

Aaron and the Ajlouny Parties soon had a serious falling out. During September 2003 the Ajlouny Parties commenced legal actions against Telepath, Timeslot and Aaron. In response, Timeslot and Telepath both filed chapter 11 cases and Aaron filed a personal chapter 13 case. The Logan Firm represented Telepath and Timeslot and Henry Rendler ("Render") represented Aaron. Litigation in all three bankruptcy cases ensued. The three related bankruptcy cases ran in concert as the Ajlouny Parties litigation was the primary focus of each case. After years of litigation, a settlement was reached in June 2006. The settlement required the debtors to pay the Ajlouny Parties $220,000 in deferred payments with 6% interest. The PA is informed and believes the settlement has been fully performed. As a result Aaron successfully retained his personal assets and Telepath and Timeslot remain intact operating companies.

The Timeslot case was dismissed on September 24, 2006. Aaron completed his Chapter 13 plan and was discharged on April 9, 2008. The Logan Firm's and Rendler's fee applications in the Timeslot and Aaron bankruptcy cases were approved and paid. Telepath's case continued as other matters required Telepath to continue under the protection of the Bankruptcy Court.

3

FIRST & FINAL APPLICATION FOR COMPENSATION BY THE LOGAN LAW OFFICE AS ATTORNEYS FOR DEBTOR
Case No. 03-56788-ASW11    In Re Telepath Corporation

Case: 03-56788    Doc# 419    Filed: 08/03/09    Entered: 08/03/09 01:27:52    Page 3 of 16

The Logan worked with the Debtor and its accountant to develop a feasible plan of reorganization and prepared Telepath's draft plan and disclosure statement. However these were not finalized nor filed when Logan died. Telepath retained Scott Goodsell ("Goodsell"), Les's attorney in the Telepath and Timeslot cases, to represent it in place of the Logan Firm.

### III. METHODOLOGY USED FOR ESTABLISHING SERVICES RENDERED & TIME EXPENDED BY LOGAN FIRM

The PA was advised Logan estimated the Logan Firm's outstanding fees were $250,000. This is supported by the Liquidation Analysis found in the Logan Firm's files, a copy of which is attached as Exhibit I. The analysis includes an administrative priority claim of $250,000 for the Logan Firm. The PA has found no bills rendered by the Logan Firm for the Telepath case. The Logan Firm filed no prior fee application in this case.

#### A. Actual Time Records

The Logan Firm used Timeslip software as its billing program. The PA believes the Timeslip time records are the best evidence of the time the Logan Firm expended in this case. The Logan Firm Timeslip records (in Pre Billing Format) for "General Matters" is attached hereto as Exhibit C and reflect the Logan Firm expended **$45,887.50** of actual time on general matters in the Telepath case. Noticeably absent are time records for Logan who was Telepath primary bankruptcy attorney.
4

FIRST & FINAL APPLICATION FOR COMPENSATION BY THE LOGAN LAW OFFICE AS ATTORNEYS FOR DEBTOR
Case No. 03-56788-ASW11                                    In Re Telepath Corporation

The Timeslips program has two additional matter categories[1] for which time has been entered:

- Objection to Ajlouny Parties Claim $3,720.00 [Note: no time between 6/12/04 and 2/2/2006]

- Ajlouny Parties Relief from Stay $1,680.00 [note: only up to 4/14/04]

The Timeslips time records in these categories do not capture the substantial time Logan was required to devoted to the Ajlouny Parties litigation over a three year period that was the primary focus of Telepath's Chapter 11 case, at least initially. The PA has reconstructed the missing time (discussed below) and has computed these actual time records together with the reconstructed time records for the Ajlouny Parties Litigation. Accordingly, these actual time records appear with the reconstructed time at **Exhibit D-13**, attached hereto.

### B. Reconstructed Time Records.

In light of the absence of actual time records for much of the professional time Logan devoted to the Telepath bankruptcy, the PA considered the most reliable alternative methods for reconstructing the Logan Firm's time expended. The PA looked for physical evidence that would reflect and support the likely time the Logan Firm expended. The PA relies on (i) the fee applications filed in the related bankruptcy cases of Timeslot and Ettinger, (ii) the Court's official record and PACER docket, and (iii) a limited review of the Logan Firm general case files both in hard copy form and on the Logan Firm's word processing documents on the Logan Firm's computer server.

---

[1] The Timeslip software has additional Telepath matter categories set up for Cash Collateral, Fee Application, Post Petition Financing and Sale. However there are no time records entered for these categories.

5

FIRST & FINAL APPLICATION FOR COMPENSATION BY THE LOGAN LAW OFFICE AS ATTORNEYS FOR DEBTOR
Case No. 03-56788-ASW11    In Re Telepath Corporation

Case: 03-56788    Doc# 419    Filed: 08/03/09    Entered: 08/03/09 01:27:52    Page 5 of 16

### 1. Timeslot Fee Application.

The Logan Firm's time records in its Timeslot fee application are helpful to gauge the likely amount of time the Logan Firm spent on similar activities in Telepath such as the initial bankruptcy pleadings, meetings with the U.S. Trustee, providing the U.S. Trustee with documents routinely required, monthly operating reports, status conference statements required by the U.S. Trustee. The Logan Firm appears to handle these routine matters efficiently.

### 2. Aaron Fee Applications

The Ettinger fee application is helpful where its time records reflect communications between Ettinger's attorney Henry Rendler ("Render") and Logan. A summary of time entries for communications with Logan from the Ettinger fee application together with the PA's computation of the value of Logan Firm fees for these communications is attached as Exhibit E. To avoid double counting, no fees are computed for the Logan Firm on Exhibit E in instances where the Logan Firm had an actual time record.

### 3. Court Dockets.

The Court's official records for Telepath's main case as well as the four related adversary proceedings evidences pleadings prepared by or reviewed by the Logan Firm and court hearings where appearances were made. It is apparent from the Court's official record that the Logan Firm expended a great more time and effort representing Telepath than are reflected in the Logan Firm's actual time records.

The PA examined and analyzed the Court's PACER dockets for the main case and the adversary proceedings. The Court's docket was first separated into project categories and estimated time expended assigned to each pleading and hearing entry.

6

FIRST & FINAL APPLICATION FOR COMPENSATION BY THE LOGAN LAW OFFICE AS ATTORNEYS FOR DEBTOR
Case No. 03-56788-ASW11 In Re Telepath Corporation

Case: 03-56788 Doc# 419 Filed: 08/03/09 Entered: 08/03/09 01:27:52 Page 6 of 16

No time is assigned to any entry for which the Logan Firm had actual time records to avoid double counting time. The computed time and estimated fees for each project category were then totaled. The summary of all reconstructed time appears on the attached **Exhibit D, Page 1**. The summary and analysis for each project category are attached collectively as **Exhibits D1 through D15**.[2]

### 4. Logan Firm's General file.

The PA turned over the Logan Firm's actual client files to Telepath. The PA has duplicates of the Logan Firm's seven volumes of the general files that included correspondence, attorney's notes and general pleadings.

The PA examined documents in the general files reflecting professional time expended by the Logan Firm and estimated the probable time expended. Due to time constraints the PA completed a close examination of three of the eight volumes. An allowance is made for the likely time reflected in the documents in remaining five volumes of the general files by extrapolating from the calculated professional time evidenced by the documents in the first three files. Attached as Exhibit F is the PA's report of her review and her estimated of time expended by the Logan Firm as reflected in the Logan Firm's general files. The review excludes time reflected on an actual time record and any time expended on pleadings filed with the court to avoid double counting and on the rationale the actual time record and the Court Docket analysis better reflects these efforts.

### 5. Comments on Reconstruction Methodology.

More likely than not the Logan Firm actually spent more and possibly a great

---

[2] As stated above Exhibit D13 Includes actual time records from the Logan Firm's Timeslip billing software.

7

deal more time than the time computed and assigned by the PA in her analysis and requested by this Fee Application. It is reasonable to expect the Logan Firm would have spent additional time for research, communicating orally with the client, meetings with the client, opposing counsel, co counsel and others. The PA has found no physical evidence for determining the likely time expended on such matters. The PA has not located any relevant calendars or diaries for Logan.

The PA declines to speculate on the amount of additional time the Logan Firm might have expended. Accordingly, the fees the PA finds supportable by a review and analysis of the physical evidence and that are the subject of this Fee Application are very conservative estimates of the time the Logan Firm invested in this case. It is very conceivable that the value of the Logan Firm's actual time could be in the range of the $250,000 estimated by the Logan Firm in its liquidation analysis of the Debtor.

## IV. **PROJECT BILLING FOR FEES**

The U.S Trustee's fee guidelines require professionals to provide project billing. In an effort to comply with the guideline the PA has categorizes the time expended by the Logan Firm into the following categories.

- General Bankruptcy Matters
- Cash Collateral
- Monthly Operating Reports
- Accountant Matters
- Claims Objection (Other than Ajlouny Parties)
- Status Conferences
- Preference Actions
- Ajlouny Parties Litigation (Stay Motion, Claims Objections, Cash Collateral Objections & Settlement)
- US Trustee Meetings & Compliance
- Executory Contracts

8

FIRST & FINAL APPLICATION FOR COMPENSATION BY THE LOGAN LAW OFFICE AS ATTORNEYS FOR DEBTOR
Case No. 03-56788-ASW11     In Re Telepath Corporation

Case: 03-56788    Doc# 419    Filed: 08/03/09    Entered: 08/03/09 01:27:52    Page 8 of 16

A. **General Administrative Matters**

The Logan Firm prepared the petition, statement, schedules, various notices of the bankruptcy filing, the application to designate Attorney the responsible individual for the Debtor, the application to employ the Logan Firm as Debtor's bankruptcy counsel, and much later in the case, to employ Miller Morton as Debtor's special counsel to pursue litigation against Microwave. Additionally, after the Ajlouny Parties litigation was resolved, the Logan Firm commenced analysis of Telepath finances and determination of chapter 11 debtors (by claims objections) to develop a plan of reorganization to allow Debtor to emerge from its Chapter 11 case.

The Logan Firm devoted in excess of 153.2 hours professional time with a value of $51,697.00 on general administrative matters calculated as follows:

| Category | Time (Hrs.) | Value ($) | Exhibit Reference |
|---|---|---|---|
| **Actual Time Records** | 136.6 | 45,887.50 | C |
| **Petition, Statement, Schedules** | 10.0 | 3,500.00 | D1 |
| **Notices** | .9 | 315.00 | D2 |
| **Related Case Motion** | 1.6 | 560.00 | D3 |
| **Responsible Individual** | .5 | 175.00 | D4 |
| **Attorney Application (Logan Firm)** | 1.6 | 560.00 | D5 |
| **Attorney Application (Miller, Morton)** | 2.0 | 700.00 | D6 |
| | **153.2** | **51,697.00** | |

B. **Cash Collateral**

At the commencement of Telepath's case, the Bank of Walnut Creek (BWC) and Les had security interests in Telepath's assets. During some time of the case

9

Motorola had a security interest in some of Telepath's assets. The Logan Firm assisted the Debtor negotiate stipulations with its secured creditors for the continued use of their cash collateral and obtained the appropriate Court approval of the stipulation. During the case, the Debtor turned to Les for additional financing. First, during March 2005, the Logan Firm obtained approval for Les to be provided an administrative claim for his post petition advances. Secondly, when Debtor required additional funding, the Logan Firm moved for the approval of post petition financing that would provid Les with the right to acquire equity in Telepath. The Ajlouny Parties objected to the motion, resulting in additional litigation with the Ajlouny Parties.

The Logan Firm devoted an estimate of **24.8 hours** of professional time with a value of **$8,680.00** to cash collateral pleadings and appearances as reflected in Exhibit **D7**, attached.

### C. Monthly Operating Reports

The Logan Firm worked with Debtor and Debtor's accountant to file all of its monthly operating reports. During the case the Debtor changed accountants and the new accountant was required to reconstruct the Debtor's financial system and prepared amended monthly operating reports. The estimated time expended by the Logan Firm for monthly operating reports is **27.3 hours** valued at **$9,555.00** as reflected on **Exhibit D8**.

### D. Accountant Matters

At the start of the case the Logan Firm obtained the Bankruptcy Court's approval of the Debtor's employment of its account the Neeka Accountancy Corporation ("Neeka"). During 2005 the Debtor and Les raised concerns regarding the quality and accuracy of Neeka's accounting work. Neeka was using accounting

10

FIRST & FINAL APPLICATION FOR COMPENSATION BY THE LOGAN LAW OFFICE AS ATTORNEYS FOR DEBTOR
Case No. 03-56788-ASW11    In Re Telepath Corporation

Case: 03-56788    Doc# 419    Filed: 08/03/09    Entered: 08/03/09 01:27:52    Page 10 of 16

methods not approved by the Internal Revenue Services compromising Debtor's ability to file accurate tax returns. Additionally the Debtor complained Neeka's financial reports showed the Debtor operating at a loss when Les and Aaron believed the Debtor was making money. The Logan Firm assisted the Debtor locate the Siress Group as its replacement accountant and obtained the appropriate authority for the Debtor to employ the Siress Group as its new accountant.

When the Neeka filed its application for compensation during October 2005, the Logan Firm represented the Debtor in objecting to the fee application. The contested matter continued on the Court's docket until November 27, 2007 when it was removed from the Court's calendar most likely for lack of prosecution.

The Siress Group provided the Debtor with timely and more accurate financial report and assisted the Logan Firm with developing projections to formulate a feasible plan of reorganization for the Debtor. The Logan Firm assisted the Siress Group with each of its fee applications which were also timely and regular.

The Logan Firm devoted an estimated **23.1 hours** of professional time with a value of **$8,085.00** related to Debtor's accountants as reflected on **Exhibit D9.**

### E. Claims Objection (Other than Ajlouny Parties)

In connection with the Logan Firm's plan analysis, the Logan firm filed objections to prepetition claims to resolve the total amount of prepetition claims the Debtor would be required to provide for in a plan of reorganization. The Logan Firm's actual time records are the best evidence of this effort. The case PACER docket reflect additional time that was not reflected on the firm's actual time record in the amount of **2.4 ho**urs of professional time with a value of **$840.00** as reflected on **Exhibit D10**.

11

### F. Status Conferences

The Logan Firm prepared periodic Status Conference Statements and appeared at Status Conferences to keep the Court advised as to the status of Debtor's Chapter 11 case. It is estimated the Logan Firm expended **20.8 hours** of professional time with a value of **$7,280.00** related to the Status Conferences as reflected on **Exhibit D11**.

### G. Preference Actions

The Logan Firm commenced four adversary proceedings to recover preferences. The PA examined the docket of each adversary proceeding and the related applications to compromise controversy pleadings in the main file. The Logan Firm expended an estimated **23.8 hours** with a value of **$6,830.00** on such matters as reflected on **Exhibit D12.**

### H. Ajlouny Parties Litigation and Settlement

Litigation commenced by the Ajlouny Parties was the motivating factor for Telepath filing for Chapter 11 protection. The hard fought litigation continued in the three related bankruptcy cases. In the Telepath case litigation took the form of stay relief motion, claims objection, objection to use of cash collateral and discovery. The litigation continued from the commencement of Debtors case in October 2003, appeared to have settled in principle during summer 2005 but was not documented by a signed writing for nearly a year later due to the difficulty the parties and their attorneys appeared to have agreeing to the details. Indeed it appears the Ajlouny Parties declared the debtors in default under the settlement agreement almost immediately after the settlement agreement was signed.

It appears from the Logan Firm's computer server that Logan prepared the initial draft of the settlement agreement and its attachments and may well have been the

12

FIRST & FINAL APPLICATION FOR COMPENSATION BY THE LOGAN LAW OFFICE AS ATTORNEYS FOR DEBTOR
Case No. 03-56788-ASW11                                                                 In Re Telepath Corporation

Case: 03-56788    Doc# 419    Filed: 08/03/09    Entered: 08/03/09 01:27:52    Page 12 of 16

moving force in getting all 12 signers to sign the final version. The global settlement was between the 7 parties, Peter Ajlouny, Andrew Ajluni, Telepath, Timeslot, Aaron, Les and Union Bank (7 parties) and approved by their respective attorneys, Otto, Logan, Rendler, Goodsell and Mark Serlin ("Serlin") for Union Bank. Union Bank's and Les' consents were required as secured creditors as the settlement provided for the Ajlouny Parties to receive security interests in Timeslot's and Telepath's assets to secure the related debtors' performance.

It is estimated the Logan Firm expended **118.6 hours** of professional time with a value of **$39,155.00** as reflected on **Exhibit D13** on matters related to the Ajlouny Parties litigation.

### I. Trustee Meetings & Production of Documents

Most of the Debtor's and its attorney's interactions with the U.S. Trustee office do not appear on the Court's PACER docket. However, standard meetings and documents are required by the U.S. Trustee of all Chapter 11 debtors. Additionally the PA reviewed the document index of the file the Logan Firm maintained for the Debtor's relations with the U.S. Trustee, a copy that is attached hereto as part of Exhibit D14. It is estimated the Logan Firm expended 6 hours of professional time with a value of **$1,800.00** for its interactions with the U.S. Trustee as reflected on **Exhibit D14**.

### J. Executory Contract

Logan Firm assisted the Debtor with rejecting its contract with GE Capital and the Debtor's motion to assume its contract with Motorola. It is estimated that the Logan Firm expended 10.7 hours of professional time with a value of **$3,545.00** as reflected in **Exhibit D15**.

13

FIRST & FINAL APPLICATION FOR COMPENSATION BY THE LOGAN LAW OFFICE AS ATTORNEYS FOR DEBTOR
Case No. 03-56788-ASW11          In Re Telepath Corporation

Case: 03-56788   Doc# 419   Filed: 08/03/09   Entered: 08/03/09 01:27:52   Page 13 of 16

## V. COSTS ADVANCED

The Logan Firm's actual Timeslip records reflect the Logan Firm advanced costs for faxes, postage, copies, court telephonic conference fees in a cumulative amount of **$14,342.23** as reflected on **Exhibit G**.

## VI. PAYMENTS RECEIVED

The Logan Firm's actual Timeslip records (at Exhibit C) reflect receipt of a total of $34,866.36 for the Telepath case. However, $1,000 was identified as the filing fees for the 4 adversary proceedings ($250 x 4) for which the Logan Firm did not charge as a cost. Accordingly the adjusted amount of **$33,866.36** is computed and reflected on **Exhibit H**.

## VII. RESPONSIBLE ATTORNEYS

Charles E. Logan (CEL) – California State Bar No. 69136. Charles E. Logan was admitted to the bar in 1976. He received his Bachelor of Arts degree from Oklahoma University and his Juris Doctrate from Santa Clara University. He concentrated his practice in commercial law and bankruptcy. From 1975-79 he was an associate with the firm of Thelen, Marrin, Johnson & Bridges and later Decker & Collins in San Jose, California. He was a sole practitioner and a partner in the firms of Adelman, :Litherland & Logan, Inc. and Logan & Jansing, A Professional Corporation. He was the 100% owner of the Logan Firm. He was the primary attorney on this case and his billing rate was $300 to $350.

Susan B. Luce (SBL) – California State Bar No. 120843. Susan Luce became an associate of the Logan Firm on October 1, 1001. She was admitted to the bar in 1985, receiving her Bachelor of Science from Southern Connecticut State College and

14

FIRST & FINAL APPLICATION FOR COMPENSATION BY THE LOGAN LAW OFFICE AS ATTORNEYS FOR DEBTOR
Case No. 03-56788-ASW11 In Re Telepath Corporation

Case: 03-56788    Doc# 419    Filed: 08/03/09    Entered: 08/03/09 01:27:52    Page 14 of 16

her Juris Doctor from Peninsula Law School. Susan has concentrated her practice in bankruptcy since 1987, representing Chapter 7 trustees, debtors, creditors and creditor's committees. She concentrated her practice at the Logan Firm in Chapter 11, small and mid-size business reorganizations. She was a member of the Board of Directors for the Bay Area Bankruptcy Forum for nine years. She is a member and was the treasurer of the Congressman Don Edwards Inn of Court. Susan's hourly rate for this case was $275 to $325. Susan's time was spent exclusively on general bankruptcy matters and on development of the plan of reorganization.

## VIII. SUMMARY OF TIME AND COSTS

In the course of representing the Debtor in this case until Logan's death, the PA concludes the Logan Firm expended at least **492.2 hours** of professional time that is reflected by some physical evidence and the value of these services is **$164,346.50** computed at the Logan Firm's contractual billing rate. The PA believes the services rendered by the Logan Firm were necessary and beneficial to the estate. In particular the Logan Firm successfully navigated the litigation and negotiated the global settlement that ended Debtor's expensive and extensive litigation with the Ajlouny Parties.

In the course of representing the Debtor, the Logan Firm advanced costs in the amount of **$14,342.23** for in office photocopying, facsimile, postage and court call conference fees. It appears the Logan Firm charged .20/copy for in office copies and facsimiles. All other costs appear to be charged at the Logan Firm's costs.

The Logan Firm's records show it received an initial retainer of $25,000.00, and additional payments in the aggregate sum of $9,674.66. $1,000 of the additional

15

FIRST & FINAL APPLICATION FOR COMPENSATION BY THE LOGAN LAW OFFICE AS ATTORNEYS FOR DEBTOR
Case No. 03-56788-ASW11
Case: 03-56788    Doc# 415    Filed: 08/03/09    Entered: 08/03/09 01:27:52    Page 15 of 16
In Re Telepath Corporation

payment was earmarked as the filing fees for 4 adversary proceedings that do not appear as a charged cost. The balance (with the exception of $191.70) was applied by the Logan Firm to costs. The purpose of the $191.70 is unknown. However, as it is an uneven amount it was likely payment of a specific invoice or charge. The net aggregate amount received by the Logan Firm is **$33,866.36** as computed on **Exhibit H**.

## IX. <u>CONCLUSION</u>

The Practice Administrator requests approval of **$164,347.50** for the fees and **$14,342.23** for costs for the Logan Firm as requested by this Fee Application for a total compensation of **$178,689.73** as Chapter 11 priority administrative expenses.

After applying the **$33,866.36** the Logan Firm received for this case, the unpaid balance of requested fees is **$144,823.37**. The PA requests the Debtor be authorized and directed to pay the unpaid balance due to the Logan Firm in care of the Practice Administrator

The unpaid balance of the approved fees and costs of the Logan Firm are priority administrative expenses of the Chapter 11 estate and as such, pursuant to 11 U.S.C. §1129 (a)(9)(A) [Pre 2005 version], are required to be paid in cash on the effective date of the Debtor's confirmed plan unless the Logan Firm agrees to deferred payments.

Dated:  August 2, 2009　　　　　　　McPharlin, Sprinkles & Thomas, LLP

　　　　　　　　　　　　　　　　　　　\_\_\_\_/s/ Elaine M. Seid_____
　　　　　　　　　　　　　　　　　　　　ELAINE M. SEID
　　　　　　　　　　　　　　　　　　　　Practice Administrator
　　　　　　　　　　　　　　　　　　　　For the Law Offices of
　　　　　　　　　　　　　　　　　　　　Charles E. Logan

16

FIRST & FINAL APPLICATION FOR COMPENSATION BY THE LOGAN LAW OFFICE AS ATTORNEYS FOR DEBTOR
Case No. 03-56788-ASW11　　　　　　　　　　　　　　　　　　　In Re Telepath Corporation

Case: 03-56788    Doc# 419    Filed: 08/03/09    Entered: 08/03/09 01:27:52    Page 16 of 16