CAMPEAU GOODSELL SMITH
A Law Corporation
SCOTT L. GOODSELL, SBN 122223
440 N. First Street, Suite 100
San Jose, California 95112
(408) 295-9555

Attorneys for Reorganized Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re:

TELEPATH CORPORATION,

          Debtor.

Case No. 03-56788-ASW

CHAPTER 11

Date: August 31, 2009
Time: 2:15 p.m.
Court: Hon. Arthur S. Weissbrodt
      280 S. First Street, Court 3020
      San Jose, CA

### DEBTOR'S OBJECTION TO LOGAN LAW FIRM FINAL FEE APPLICATION

Debtor TELEPATH CORPORATION hereby OBJECTS to the Logan Law Office final fee application, and represents as follows:

### INTRODUCTION

As Practice Administrator for the Logan Law Office, attorney Seid is suggesting that this Court undertake a dangerous and inconsistent precedent: in lieu of actual time records, attorney Seid has "guesstimated" attorney Logan's unrecorded time by estimating his time "probably expended" – by reviewing 3 volumes out of 8 volumes of Logan office files for estimated time, then "guesstrapolating" the same time expended to the remaining 5 volumes.

If this "guesstimating" procedure is permitted in this case, it will be difficult to deny compensation to any other professional who – by virtue of laziness, incompetence or simply lack of attention – seeks to fling a sum at the Court unsupported by competent timekeeping records.

Telepath has other particular objections, to be sure, but attorney Seid cannot simply create recorded time where none exists – and the peculiar circumstances relating to the Logan Law Offices in this case cannot justify allowance of "speculative time billing" to be accepted.

## OBJECTIONS

Telepath's objections to the instant Logan Law Office fee application can be reduced to three basic categories: (1) billings calculated at higher-than-contract rates, (2) billings based on attorney Seid's guesstimates and extrapolations, and (3) unnecessary costs/delay in presenting Telepath's reorganization plan.

### 1. FEE APPLICATION RATES ARE NOT CONTRACT RATES

As set forth in Aaron Ettinger's declaration, when he engaged the Logan Law Office in October 2003, ***the contractually agreed billing rate for Charles Logan was $300.00 per hour and for Susan Luce was $275.00 per hour.*** Although the Contract provides that rates were "subject to change on 20 days' written notice," Telepath never received a single billing statement from Logan nor did Telepath ever receive any notice of any rate change from Logan throughout this case. Telepath is advised that attorney Seid does not dispute Ettinger's statement.

Nonetheless, the Logan Law Office fee application presented seeks compensation for Charles Logan at rates ranging from $300.00 - $350.00 per hour and for Susan Luce at rates ranging from $275.00 - $375.00 per hour[1].

---

[1] The Logan fee application states that attorney Logan's billing rate ranged from $300.00 - $350.00/hour and attorney Luce's from $275.00 - $325.00/hour, but review of the pre-billing statements shows that much of attorney Luce's time was billed at $375.00/hour.

If the Logan Law Office *actual time records pre-billing statements* (Exhibit C) were recast at the correct contract billing rates, the sum due would be *reduced by $8,307.50.*

If the Logan Law Office *guesstimated Docket Analysis time calculations* (Exhibit D) were recast at the correct contract billing rates, the sum due would be *reduced by $9,350.00.*

If the Logan Law Office *guesstimated Rendler time calculations* (Exhibit E) were recast at the correct contract billing rates, the sum due would be *reduced by $330.00.*

If the Logan Law Office *extrapolated time calculations* (Exhibit F) were recast at the correct contract billing rates, the sum due would be *reduced by $3,510.00.*

**Total reductions based on applying Contract fee rates should be $21,497.50.**

### 2. "GUESSTIMATED TIME" IS NOT REAL TIME

Of the $182,933.02 sum sought by the Logan Law Offices, *only $64,473.03[2] is* supported by contemporaneous time records or cost records. The remaining $118,459.99 sum is essentially "made up" by attorney Seid.

Attorney Seid utilizes three processes to create billable time for attorney Logan.

*First, in Exhibit D,* she reviewed the Court's Docket for filed pleadings and assigned attorney Logan billable time for various selected events. For example, she assigned 10 hours for attorney Logan to prepare Telepath's Voluntary Petition, Statement of Affairs and Schedules, and assigned another 0.5 hours for amending schedules. This is a random guess because we do not know how much actual time attorney Logan spent in preparing these documents or how much not-billable time was spent by his staff in preparing these documents. Likewise, attorney Seid has

---

[2] The $64,473.03 sum is derived from actual time records ($45,887.50) plus actual costs ($14,342.23) plus supplemental fee application charges ($4,207.30 fees + 35.99 costs). The supplemental fee application fees are unsupported by any time records. The actual time records sum of $45,887.50 is computed using non-contract rates, as described above.

assigned 0.9 hours for drafting 4 bankruptcy Notices (likely prepared by attorney Logan's staff) which includes 0.2 hours for a Notice of Time Change for Meeting of Creditors (likely prepared by attorney Logan's staff). Because attorney Seid has assigned time to attorney Logan for time likely spent by his staff's activities, Telepath questions those "assignments" by attorney Seid.

Further, some assigned time seems unlikely: for example, 1.5 hours in "attorney" for Docket entry 322 for Application to Employ Miller Morton as Special County followed by 0.5 additional hours for Docket entry 323 for Order Granting Application to Employ Miller Morton. Every MOR in "MOR" required 0.4 hours for attorney Logan review and 0.1 hours for him to prepare an identical monthly proof of service (likely done/mailed out by staff without attorney Logan's monthly involvement); total MOR review time under this process results in $9,555.00 incurred in attorney Logan MOR review time, which seems highly excessive since the same MORs were being prepared by accountant Siress and (at times) reviewed by attorney Luce also. These "assignments" (and others) by attorney Seid appear so arbitrary as to be unreliable.

***Second, in Exhibit E***, she reviewed attorney Rendler's fee application in Aaron Ettinger's personal Chapter 13 case for telephone conferences/correspondence between attorney Rendler and attorney Logan. While these contemporaneous time records (of attorney Rendler) are more reliable than "guesstimates" by attorney Seid, many relate to Timeslot Trunking; there is no indication that attorney Seid cross-referenced the Timeslot Trunking fee application to eliminate any possibility of double-billing for the same conversations/correspondence.

There are examples of double-billing for the same hearings: attorney Seid assigns 1.5 hours for attorney Logan's attendance at the 8/30/05 continued hearing in the Ajlouni matter in Exhibit D (Exhibit D 13, p. 13), and she assigns 1.0 hours for attorney Logan's attendance at the same 8/30/05 continued hearing in the Ajlouni matter in Exhibit E (Exhibit E, p. 2). This example

demonstrates the danger of departing from an accounting-system based time-keeping to "guesstimations" – duplication of "guesses" creates inherent unreliablity and duplication risks.

***Third, in Exhibit F***, she performed a "limited review" of 3 volumes of the Logan firm's general case files and "extrapolated" those conclusions to the remaining 4 volumes. This procedure is both unreliable and wholly inconsistent with Bankruptcy law and local Guidelines.

In order to adequately review any fee application, this Court must be able to review and evaluate individual time entries for particular events; "time-keeping extrapolation" prevents the Court from conducting any reasonable review of attorney actual activities. For example, if the Court were to take the first month's (or first week's) billings in any Chapter 11 case, and "extrapolate" that billing experience to the remainder of the 2-5 year Chapter 11 case, the extrapolated sum would undoubtedly greatly exceed the actual time billed during that case – because the first month (or week) is generally far more intense than any other part of the Chpater 11 case excepting only plan confirmation at the end of the case. Thus, the Court would never allow any Chapter 11 professional to "extrapolate" his time from a "sample" of his activities.

In this particular case, attorney Seid appears to have reviewed correspondence files from the early period of this case (10/03-12/04), and then "extrapolated" forward the remaining 3 years (1/05-9/08); but in actuality, for the last 2 years of this case, attorney Luce WAS keeping her own time records and she WAS the primary attorney working on this Chapter 11 case. So the "extrapolation" seriously misrepresents actual Logan firm activities and timekeeping.

While this process might have been more economical for attorney Seid, it leaves Telepath and this Court with no reasonable means to evaluate the claims being made for attorneys fees on behalf of the Logan firm. Further, this process is wholly unacceptable under the Local Guidelines and under Bankruptcy procedure and ***all such "extrapolations" must be disallowed.***

### B. 'GUESSTIMATED TIME" CANNOT BE AUDITED

If the Logan firm had sent ANY billing statements to Telepath, Telepath could well have been expected to raise an objection or question time spent or allocated. But over the course of the 5 years during which the Logan firm represented Telepath, Telepath never received a single billing statement. Ergo, Telepath has never been apprized of any debt to the Logan firm, or of attorney Logan's expectations for payment, or in what sum. Telepath did not, however, intend to grant the Logan firm a blank check without ability to review that firm's proposed reckoning.

Now, through attorney Seid, the Logan firm has proffered a final fee application which may or may not comport with attorney Logan's actual time expended in this case. Rather, the fee application represents what attorney Seid thinks attorney Logan may have intended to bill, but without any time records supporting what attorney Logan may actually have done.

It is impossible for Telepath or its counsel to recreate attorney Seid's thought processes as she assigned time for attorney Logan's supposed activities in this case -- without deposing attorney Seid. As she states: "The PA [attorney Seid] has found no physical evidence for determining the likely time expended on such matters. The PA has no located any relevant calendars or diaries for Logan." Ergo, attorney Seid's guesstimations concerning attorney Logan's activities are subject to review only through her cross-examination by Telepath.

### C. IF YOU REALLY NEED TO GUESS ...

Telepath does not in any way consent or acknowledge that "guesstimation" or "guesstimated extrapolation" can substitute in any way for actual contemporaneous time records.

However, if anyone could reasonably project what the Logan firm's attorneys fees/costs should have been, the most knowledgeable remaining individual would probably be attorney Luce, who worked with attorney Logan on the Telepath matter. As set forth in Aaron

Ettinger's declaration, in September 2008 when he queried attorney Susan Luce regarding how much Telepath had incurred in attorneys fees, she said that *she "couldn't imagine that it would be more than $100,000."*

The guesstimated fee application prepared by attorney Seid is almost twice that sum.

### 3. WHERE WAS TELEPATH'S REORGANIZATION PLAN?

As set forth in Aaron Ettinger's declaration, once the Ajlouni matter was resolved in mid-2005, Telepath was freed to proceed to a prompt reorganization. However, no Telepath reorganization plan was forthcoming from the Logan Law Office.

In the Logan Law Office fee application, the firm represents that it "worked with the Debtor and its accountant to develop a feasible plan of reorganization and prepared Telepath's draft plan and disclosure statement." (Fee App., p. 4). Actually, no draft plan was ever found[3] - only a draft disclosure statement with significant factual errors and an agreed cashflow projection as described in Aaron Ettinger's declaration, upon which the disclosure statement was premised.

Beyond stating the foregoing conclusion, the fee application attributes no specific attorney time to this effort; rather, such attorney time is buried in the fee application as "General Administrative Matters." (Fee App., p. 9). When such time is teased out from the other matters lumped into that category, attorney time dedicated to plan/disclosure statement issues totals 102.3 hours; *the total sum billed for such activities is $34,372.50*[4]. Since no plan was found and major changes were required for the draft disclosure statement, this sum should be reduced by half.

---

[3] Although various entries on the Logan pre-billing worksheet reference drafting and/or modifying a "plan" (distinct from "disclosure statement"), no draft plan was ever found in the Logan office files and no draft plan was ever provided to Telepath's principals – so if it once existed, it was of no utility to Telepath or its subsequent bankruptcy counsel.

[4] All time billed is by attorney Luce at rates ($325/$375) exceeding contract billing rates.

From March 2006 until September 2008, attorney Logan apparently filed 10 Status Conference Statements and attended 10 Case Status Conferences hearings in this matter, to which attorney Seid has assigned 0.5 hours for attorney Logan to prepare each status conference statement and has assigned 0.5 hours for attorney Logan to attend each status conference. Some/many status conference statements were identical from hearing-to-hearing and undoubtably attorney Logan attended status conference hearings for more than one client at a time. However, as set forth in Aaron Ettinger's declaration, these continuances and continuances seriously and unnecessarily damaged Telepath's reorganization efforts and were conducted primarily for attorney Logan's convenience to Telepath's detriment. The attorneys fees attributable to these delays should not be borne by Telepath, and *the fee application should be reduced by $3,430.00.*

## SUMMARY

This fee application seeks to have this Court make a fateful decision: either actual contemporaneous time records are mandatory – or after-the-fact guesstimations are sufficient. This Court should require professionals to behave professionally: it is no penalty to require professionals to keep time records to comply with the Local Guidelines, and those who choose otherwise do so at their own risk. *In this case, all "guesstimated" and "extrapolated" fees should be denied, and actual contemporaneous time records allowed at their contracted rates.*

Dated: August 25, 2009          CAMPEAU GOODSELL SMITH


By  /s/ Scott L. Goodsell
    Scott L. Goodsell
    Attorneys for Reorganized Debtor